It is black letter law, both in this circuit and elsewhere, that an expert witness in a criminal trial may not testify about a defendant's mental state. But that is exactly what happened here when the trial court, over the defense's adamant objection, permitted IRSCI Special Agent Kenny to testify to what he called, quote, that the court or a trial court might see in the context of, for example, a narcotics prosecution. And the reason why is because under Title 26 and under the United States' Supreme Court precedent in CHIC, the Seminole Criminal Tax Case Governing Intent, mens rea, tax evasion necessarily requires that an affirmative act, the actus reus, be done or committed willfully, the mens rea. And the mens rea requires under CHIC the intentional violation of a known legal duty. The point here is that mens rea is necessarily attached to actus reus. Well, how is the agent's testimony about what typically happens inappropriate in this case when the agent wasn't testifying about specifically the defendant in this case or the acts in this case?  First of all, because the agent was characterizing that certain acts, for example, the use of cash, the use of what he called shell companies, corporate diversion, constituted common methods and techniques of tax evasion. And then what the government did with that is argue that Mr. Prim, the defendant in this case, did those things. Now, that was, of course, a factual dispute at trial. But when you couple three things in this case, that is exactly what the agent testified about. In other words, when you couple the agent's testimony that these acts are common ways that people commit tax evasion or common methods of tax evasion with the jury instruction, which as this court has held correctly and repeatedly, juries are presumed to follow, that the affirmative act must necessarily be committed willfully for it to even constitute tax evasion, with the government's entire factual theory of prosecution and factual contention that Mr. Prim did the things, or at least some of the things that Special Agent Kenny from the IRS testified are common ways that people commit tax evasion, which necessarily requires willfulness, then I would submit to you, Your Honor, that what the court actually permitted the Special Agent to do was attach Mr. Prim's mental state to tax evasion. How is this different, counsel, how is this different from the expert testimony we allow in the drug area? In the drug area, we allow officers who have narcotics experience to say, this is how they communicate, this is how they normally do drug deals, etc., etc. And then, like in this case, it ends up that the defendant has done some of those things. And yet we've approved over and over again that type of testimony in the drug area. Your Honor, this is different precisely because of cheek, because of willfulness, because tax evasion necessarily requires not only a mens rea, a mental intent, but it's actually the most high, it's the highest specific intent standard that I'm aware of recognized within the federal criminal law. And the reason that's so significant is because in the drug cases, what you have commonly, and obviously this is an area of dispute, but what the courts have approved and what the circuit has repeatedly approved, is testimony where, for example, an experienced or a seasoned DEA agent might say, people who deal with narcotics, you know, may do certain things, may keep a lot of cash on hand, whereas other people may not. It, of course, doesn't necessarily attach commission of the crime to that. It gives the jury information under Rule 702 that might be deemed helpful within a judge's discretion. What's your closest case with analogous circumstances and facts where a court has prohibited this type of testimony that you seek to have removed? Your Honor, it's a good question. I'm not aware of a single case where a court has allowed this kind of testimony. And I say that having prosecuted criminal tax cases for just under five years and having defended them for approximately eight years. There's not a single case that we could find where a district court has permitted a CI agent, a criminal investigation agent for the IRS, to essentially say, this act constitutes tax evasion. And where a prosecutor is then permitted to essentially say, this act constitutes tax evasion, and we're asking you, the jury, to find that the defendant committed tax evasion because he committed this act. What the special agent essentially did was give an expert opinion that Mr. Prim committed the two felony counts charged in this indictment, tax evasion. And that's the core of this. With respect to the case law, the government cites a number of cases, Bedford, Moore, Duncan, Wilson, Liner, that do not even involve alleged violations of Section 7201 of the tax evasion criminal statute. The government also cites a number of cases that there's no dispute about, whereby experts can give expert testimony about the tax consequences of a specific transaction. That happened in this case with a different expert, Revenue Agent Comiskey, but that's not at issue here. Because when an expert, for example, gives testimony about the tax consequences of a specific transaction, which an expert can do, that's appropriate expert testimony, the expert is in no way, shape, or form connecting that to mens rea. The expert is basically doing an accounting analysis. Could the, maybe he did this and you still think it's not kosher, but could he have said, for example, things we, like in the drug trade, things we commonly see with tax evasion. So when we prosecute these cases, not when we prosecute, when we see these things and investigate these things, we see lots of cash, we see use of shell corporations, we see this, that, and the other thing. Would all of that be permissible? I'm not saying that he committed tax evasion, but just that those are the types of things we see commonly in tax evasion cases. Your Honor, I still think that would cross the line. I would concede to you, though, Judge Strauss, that I think that's a closer question than what happened here, which is this is tax evasion. If you look at the evidence that was admitted that was connected with this testimony, and we submitted this with our briefing, which I believe the Court has, then what the, what was essentially a PowerPoint slide, it was a chart, was these things, these acts constitute tax evasion. And that's where it unambiguously crosses that line. So where I would concede, Your Honor, that it might be a closer question with the Court's hypothetical, that's not the question that's before this Court. Did he testify that these acts constitute tax evasion or that these are things we commonly see in tax evasion situations? He testified that these were, quote, common methods and techniques of tax evasion, end quote. All right. Well, that's a little different than what you just said. Your Honor. I mean, let's begin with, I think we'll both agree the tax code is immensely difficult to understand, and especially for a jury, right? I would agree. So it is helpful to a jury to have somebody explain what are common ways that tax evaders evade taxes. Yes? Your Honor, no, I would push back on that. The reason why. How is a jury possibly going to understand that? Because when you talk about the complexities of the tax code, then it's very helpful for a jury to have, for example, an expert revenue agent, an accountant, for example, to say, just by way of example, repayment of a loan does not constitute taxable income, whereas receipt of money for a job constitutes taxable income that has to go on a tax return. That's different from saying something that's well within a jury's decision-making ability, which is did the acts coupled with any evidence, if there is any, of willfulness, of an intentional violation of known legal duty constitute tax evasion? There is no such thing as tax evasion without willfulness. That's where it crosses the line. And that's where it's different from, for example, drug cases. I would direct the Court's attention. But I still don't see how that witness is testifying to your client's willfulness. Let me finish. There had to be other evidence that your client engaged in those indicia of tax evasion, but there can also be innocent explanations for those, right, which would negate willfulness. Your Honor, I think that the question before this Court that we've raised is whether this crosses the 704B line, regardless of whether the evidence might otherwise be sufficient or insufficient to constitute the criminality of the offense. But this witness, correct me if I'm wrong, this witness didn't testify that your client did these things. He just said these are common indicia of tax evasion, right? I would draw a slight nuance, Your Honor. Yes, Your Honor, that's correct, with one nuance, and I think it's an important nuance, and that's that this witness testified both wearing a so-called expert witness hat and then testified as a factor summary witness and did connect those dots. Now, I want to be crystal clear. This witness, Special Agent Kenney, did not say, it is my expert opinion that, you know, Mr. Prim committed tax evasion in those words. But I think that by letting the testimony in that the Court let in in the context of tax evasion, which is different from other criminal statutes because of Cheek, because of the mens rea, that the Special Agent effectively did, because using even the phrase tax evasion is a crime that necessarily implies willfulness. Judge Smith asked earlier about kind of our best case, so to speak, and while this is not directly on point, I think it's relevant to the Court's inquiry, and that's this Court's decision in FELAK, F-E-L-A-K, we cited in our brief. And that's where a defendant actually tried to introduce evidence by a mental health expert that he essentially, and I'm oversimplifying, but did not have the capacity to form a willful intent, to form the mens rea sufficient to constitute the tax crime at issue. And the District Court excluded it, and this Court affirmed that decision. The whole idea is anything that comes close to testimony about a defendant's willfulness in a criminal tax case is not proper for expert testimony. And that's where we believe this crossed the line here. The government is asking this Court in this case to become the first Court ever that I can find, and certainly the first Court within the first decision within this circuit, to hold that this, that what happened here in this case, can happen in criminal tax cases. It's asking this Court to say, apply the narcotics case law to basically criminal tax prosecutions. Give us free rein to do that, and I think that's a slippery slope. But there's another component to that as well. And that's a separate legal error that I want to draw the Court's attention to. And that's that when the Court let this in, we requested janks for, essentially, every statement this special agent has ever said about methods that people have used to commit tax evasion. Bluntly speaking, if he testified in another case, if he wrote a special agent report, a written document in another case that said some defendant committed tax evasion, either through one of these methods or through another method, then that falls within the plain language of the Janks Act of 3500B of Title 18. And as a practical matter, at the point that the government let this, offered this testimony and that the Court let this testimony in in the way that it did, we were denied that janks material. That was compounded with a number of other significant discovery violations in this case. An admitted, undisputed giglio violation. What was the District Court's basis for denying the janks? The District Court narrowly construed the subject matter, and incorrectly, of the witness's testimony, of special agent's testimony, as limited just to the prim investigation. And that's the whole point. If the special agent really did just offer general testimony that wasn't about the prim case, about common ways people commit tax evasion, that in and of itself is erroneous, and significantly so. Because the plain language requires, it doesn't even make it discretionary, shall order statements in the possession of the United States which relate to the subject matter of the prosecution. The giglio violation was a DUI conviction that was only disclosed until after the critical witness, Mr. Logo Mussini, left the witness stand and was on an airplane back to Florida where he resided. There was a issue with tax returns of his company, Highland Management, which the IRSCI special agent, the same special agent who testified as an expert in what we believe is an incorrect way, Special Agent Kenny, actually reviewed the Highland Management tax returns during this investigation, which reflected a position that was inconsistent with the tax due and owing computations offered by the revenue agent, Mr. Comiskey, at trial. That was never disclosed to us. The government's position on appeal seems to be it's not within the possession of the prosecution. Weren't you offered the opportunity to have the witness brought back? We were offered the opportunity to have the witness brought back solely to ask him one question, which is did you commit a DUI? That's profoundly different than the ability to use that as impeachment during his cross-examination in a strategic and important way. That's why Brady and Giglio have to be disclosed sufficiently in advance to use them effectively at trial. Well, you would have been able to use it in your closing in arguing to the fact finder that the witness's testimony was lacking in credibility. Yes, Your Honor, we would have been able to argue that fact in our closing. What we would have been denied is the jury's ability to perceive how that witness responded, to observe that witness's response to that method of appropriate impeachment under 609 during his cross-examination. So it would have been just a fact to argue, as opposed to giving the defense the ability to actually use it effectively at trial, which is what the law requires. Am I mistaken? It ultimately did come in, didn't it, into evidence? Your Honor, it ultimately did not come into evidence. We had the option to ask the special agent about that fact, which would have just been eliciting essentially a random fact. And you elected not to do that? We did elect not to do that, but I do not believe that that is a cure or a remedy for the Brady violation. I think what we had the right to do, the Constitution requires, is use it in a way that was during the impeachment of the witness's testimony to challenge the credibility, and giving the jury the ability to observe that witness, not another witness, just say that's a fact. Your Honor, if I may reserve the rest of my time for rebuttal. All right. Thank you, Mr. Gilfant. Mr. Bateman. May it please the Court. I wanted to start with the issue about the expert testimony of Special Agent Nick Kenney of the IRS. Contrary to what appellant argues, that was modus operandi evidence. It's been routinely upheld here in the Eighth Circuit and elsewhere. None of the cases involving modus operandi hinge upon the mens rea of the offense. And I think what, and by the way, neither does Rule 704. 704 says the expert cannot opine on the mental state of the defendant. And I think what the appellant is essentially asking you to do is carve out the willfulness, any offense that involves willfulness from this full body of case law and from Rule 704. And there's just no support for that. At no point during this testimony did the Special Agent invade the province of the jury. He never opined at all on the ultimate issue as to the defendant's requisite mental state. I think, Judge Grunder, you had asked if there's any cases where this had been done before. Was there any examination of the expert for the qualifications upon which he was opining? There was, Judge. Some regard of his background and expertise to offer the testimony? Yes, Your Honor, there was. You know, standard qualification type questions were asked about his experience as an agent. He had been an agent for approximately 20 years. He testified about the number of tax evasion cases he had worked, things like that. Was he asked about any demonstrative evidence that he produced in the past illustrating methods of tax evasion? Yes, Judge. So when the issue about the scope of Jenks came up, we had asked the agent questions about sort of his experience and whether there was anything in his past that might fall within the scope of Jenks. And he said he had never testified. He never had a tax evasion trial before. He had never testified as an expert. And although he had testified in grand jury before, he had testified as a fact witness. So he had never testified as an expert in grand jury about common methods and techniques of tax evasion. Well, is this particular technique used in your tax evasion experience to have a special agent who is a part of the underlying case come in and offer modus operandi testimony? As it turns out, it perhaps is not done routinely. There is a Ninth Circuit case where this exact sort of presentation was made. It had to do with an evasion case. It was a tax protester case. So the special agent there testified about his experience with tax protesters, and he was permitted to testify that what he discovered in the investigation of those defendants overlapped with his training and experience involving tax protesters. So that's a case that follows almost directly along the same lines. Is it a district court or circuit court case? It's a Ninth Circuit case. Ninth Circuit case. Is it in the briefing? It is, Your Honor. And I just want to point out what the court said there because I think it's instructive here. They said he, being the special agent, he's not being called on the issue of willfulness. He's being called on the issue of consistency of activity. And that's exactly what happened here. Judge Clark permitted this agent to directly link what he described as common methods and techniques with what he found in this case. But he didn't even go that far. He didn't even directly say, you know, what I found, the conduct of the defendant here is indicia of tax evasion based upon what I testified to earlier about the common methods and techniques. Isn't that a problem, though? I mean, I think one of the things that troubles me a little bit about this case is the fact that you have an expert say, this is what I observed. And rather than having a different expert come in, you then have that expert serve as a fact witness, and, oh, I observed all these things, too, in this case. Doesn't that present a problem in terms of mixing the fact and the expert in this particular case? No, I don't think so, Judge, because he didn't render any opinion. First of all, he didn't directly link those things. But, again, I mean, to the extent that we're concerned about an opinion he made with respect to willfulness, I mean, that's just not part of what he said. I mean, he even said in the first portion, the expert portion, talking about common methods and techniques, he said, for example, use of shell companies is not always indicative of tax evasion. He said sometimes shell companies have legitimate uses. He said with the excessive use of cash, that is dependent on sort of the type of business we're dealing with. So I think what he's really saying there, he didn't directly say it, but what he's saying is even though these are common methods, they don't apply in every situation. Yes, was the PowerPoint presentation, I think he gave a PowerPoint, was that made available to the jury as an admitted piece of evidence, or was it something that was just shown to the jury to assist with his testimony? It was shown to the jury to assist with the testimony. So it was a PowerPoint presentation, Judge. It was nine slides. The first slide is the expert portion, if you want to think of it that way, the common methods and techniques of tax evasion. The remainder of those slides dealt with his investigation of the appellant here. I want to then turn to – It's common in tax evasion cases to have an IRS agent as a summary witness. That's correct, Judge. Was this expert also the summary witness? He was, Judge. He testified about – he summarized the testimony from other witnesses, and he also summarized aspects of his investigation. I understand Judge Strass' point. I mean, it does get awfully – and Mr. Gelfand's point, it gets awfully close to having somebody both opine as to what are common techniques, and they, in fact, are here, therefore, you must conclude X. I know we left out the therefore part, but – Well, I think implied testimony is okay, though, and that's what the Eighth Circuit has said before. That's the Liner case. The Eighth Circuit there said testimony that implies or causes the jury to infer the ultimate conclusion is permissible, as long as there's not an express opinion about the requisite mental state of the defendant, and that simply just was not here. The next issue involving the scope of janks related to this witness, I think I answered this a little bit in response to Judge Smith, but there's just simply no facts to support that there's anything more. So would the problem be, then, with the objection that it was too broad? Is that what your position is? Well, I think the way that it was handled correctly at the district court was that there was no culpable claim that any janks existed. So in other words, we had disclosed the grand jury transcript from this investigation. We had disclosed hundreds of emails to and from this witness about his investigation here. At trial, we got a new request for additional janks or additional materials, and the argument was that somehow his expert testimony sort of broadened the scope of janks to include, I suppose, every case he's ever worked on. And Judge Clark asked what is the legal basis to broaden janks that far, and there was no case law presented. I mean, the only case law there really is here in the Eighth Circuit on this fact is that grand jury testimony from other cases is not within the scope of janks, that background and collateral information is not part of janks. And I think that's where, to the extent anything exists, that's where it would fall. I mean, certainly this witness has never testified as an expert, so I think that ends this analysis. Wasn't there a request or was there a request for general documentation produced by the IRS with kind of broad statistics about methods of tax evasion? Was there something like that? No, I believe the agent was asked in cross-examination whether he reviewed any publications that was consistent with his testimony, and I believe his response was no. But as far as the janks request goes, that was not part of the request. I just wanted to address, too, the Rule 29 motion about the alleged discovery violations. Now, all these issues involve the government's fourth witness, Mr. Logo Mussini. He had a prior felony conviction, a DUI conviction, that was disclosed at trial. So it's the government's position, and I can see that is giglio information in the sense that it's impeaching. Now, I think it's impeachment in perhaps the lowest sense of the word. You know, I think we'd have to draw distinctions between what's impeaching, what's admissible, and then whether or not there was a violation. So we conceded that we would not contest the admissibility of this impeachment information. I think had we contested it, perhaps it would not have even been admissible. But the fact that it was disclosed at trial means that there was no giglio violation. It was not suppressed. But nonetheless, we still need to have a way for, since we conceded the issue, there needs to be a way for this information to be provided to the jury. And the appellant had multiple different opportunities to have that done. The most obvious, I think, remedy, so to speak, is to just simply call the witness back. That's what the government first offered. That's what the court wanted to do, indicated that that was going to be their preferred remedy. And the appellant said they did not want that, that they declined. And actually what they wanted was a curative instruction that the government had violated the defendant's constitutional rights. So when the court said it looked at that case, the facts were very different there. That case itself, it's a Ninth Circuit case, said the remedy has to be consistent with the injury. And the court said they didn't think that was the appropriate response. And ultimately what happened was the appellant proposed and approved a plan where the special agent would simply be asked on cross-examination about this fact, just so that the jury would have that information available to them. And what happened was the question was never asked, so that information was never presented to the jury. And I think that goes to, at various times through the briefing, this was referred to as Giglio or Brady. I think that goes squarely to Brady. I mean, other than the common sense that this is not Brady, the fact that the appellant did not provide this information to the jury when they had the opportunity to do so, I think that goes to materiality. So, you know, the other issue involving these Highland Management tax returns, just to be clear, this has to do with count two, the evasion count in 2014. The element of the offense that this deals with is the amount of the tax due and owing for that year. So during – excuse me, I'm sorry, judges. So what happened here is the revenue agent testified – I'm sorry, judges, I'm getting over a cold here. The revenue agent testified that the – he testified that in his calculations as to the taxes due and owing for that year, he testified that he calculated $380,000 for that year. $180,000 of those dollars has to do with money that went from Highland – went from Highland to Mr. Logan – it went from Mr. Prim to Highland Management to his shell company, International Megalodons. So the $180,000 that went back to International Megalodons was calculated as being due and owing – or taxes due from – to Mr. Prim. So, you know, I think the allegation that this is Brady, the analysis has to do with – you're still left with $200,000 of income attributable to Mr. Prim in that year. Let me ask you this. I understand the argument, and you can correct me if I'm wrong, and this will give you a chance to sort of catch your breath. Sure. Is that Highland treated them as loans, that the way they treated them on their tax returns was upward. And so the argument would be, yes, the government is trying to prove I, Prim, and my companies committed tax evasion, but as exculpatory proof, we're going to show that the person who we dealt with or the company we dealt with treated them above board. And so I'm not sure how material it is, but isn't it exculpatory at the very least? I don't think so, Judge, because I think what happened – the revenue agent said that he looked at the entire transaction. He looked at the money that went from United to Highland. On the checks themselves, it said mailing. And that's significant because this individual was a consultant for United who helped with the mail. So the checks were made to look at least – made to look like they were business expenses. In fact, United booked them in their books and records as a business expense. When the government interviewed Stacey Brown, who's the bookkeeper for United, she said that Mr. Prim told her these are not loans. That's why she booked them that way. When she talked to Mr. Logomassini, he said he thought they were loans. Mr. Logomassini said he thought they were loans because Mr. Prim told him they were loans. So the revenue agent said, looking at the reality of the situation – and here we are seven years later at trial. Nobody has ever called in these loans. He looked at that reality. He looked at the fact that – excuse me. He looked at the fact that there was no loan paperwork, and he made a professional judgment about what that was. And really what he said that was is taking money out of the company and getting it back to Mr. Prim through his shell company. So I don't think a third party gets to make the ultimate decision as to what the tax consequences is, particularly when there's no other evidence that there's a loan other than what Mr. Prim told to Mr. Logomassini. Would the argument be then that this evidence came in anyways by the fact that you just mentioned Logomassini ended up treating this as a loan, or potentially as a loan, whereas Prim did not? And so we don't need the tax returns necessarily to reinforce Logomassini's testimony. That's exactly right, Judge Strauss. I think this is cumulative of – I mean, I think the jury was left with the understanding that Mr. Logomassini believed this to be a loan. I think the jury heard testimony both from Mr. Logomassini that he did it that way. The special agent testified on cross-examination at some point that he looked at those returns, and he recalled them being booked as loans. And they heard testimony from Ms. Brown as well that when she spoke to Mr. Logomassini, he considered them to be loans as well. So the jury was presented with this information. It's just that it was the government's calculation that notwithstanding however he put them on his books or his – Mr. Logomassini put them on his books or his returns, they were still properly attributable as income to Mr. Prim. The last issue that came up had to do with the sufficiency of evidence. And I'll just point out here that there's no element of any charge here required the government to prove the corporate form of United. Notwithstanding, there was ample evidence presented, including the fact that United actually did file as a C corporation in a tax year, which was accepted by the IRS. I do have a few minutes left, judges, but if I don't have any further questions, I will just simply thank you for your time and ask that you affirm the convictions. Thank you. Thank you, counsel. Mr. Bateman. May it please the court. The Ninth Circuit unpublished opinion in Barkley, the tax protester case that Mr. Bateman referred to, has a critical distinction. And that is that the jury instruction in that case, the Ninth Circuit pattern instruction on tax evasion, differs dramatically than the pattern instruction here because it doesn't separate – I'm sorry, the Ninth Circuit instruction separates the affirmative act from willfulness, whereas the Eighth Circuit pattern instruction, which was correctly given in this case, directly ties the two together. The other issue is that that case did not, as I understand it or as I read the opinion, I could be mistaken on this, does not combine expert and fact testimony the way that happened here. And then when you add on to that is Judge Grunder asked Mr. Bateman, this special agent was also the summary witness. So he's wearing essentially three hats. I've literally never heard of that happening in a criminal tax case. I've never seen it happen in a tax case. I never did that as a prosecutor and I've never defended against it other than in this case. And the reason why is because it's not allowed. The jank scope is critical here. And that's that what we were really getting at is under 3500B, it's completely likely, in fact it's implausible for the alternative to be the case, that their expert, the government's expert on tax evasion, has some experience testifying or investigating methods by which some other person committed tax evasion. And if those methods were something other than the six that he put on the exhibit that was introduced to the jury, or if those methods were identical to that, it falls within the subject matter scope of a prior statement by the agent. And it was a clear abuse of discretion to so narrowly interpret that. Mr. Bateman is correct that when the judge asked, could I come up with a case whereby a special agent has testified as an expert in this capacity and the Janks Act was applied, the answer was I couldn't because I've also never come across a case where this kind of testimony was allowed in the first place and where this issue came up. So these are novel issues. But didn't the agent testify that he had never testified as an expert before? He did, Your Honor, testify that he had never testified as an expert. I think that it conflates two issues in an incorrect way. Because the issue is whether he has ever either testified or created some sort of written statement. What was the process for qualification of the witness as an expert? Just broad foundation of his background experience, going to FLETC for six months, being an IRS CI special agent. The point is not whether he's testified as an expert. It's whether he has any prior statement about the subject matter of what he now testified as an expert. So, for example, a radiologist may say this is my first time testifying as an expert, but I read an article about tumors. I mean, that's perhaps a silly example. But the idea there is you can have a prior statement under the plain language of the Janks Act. That wasn't the case here. The last thing I want to talk about very briefly. Were you allowed to inquire about whether he had made any other prior writings on this subject? I don't think I was prohibited from inquiring about it, but when it came to the Janks Act at the close of the direct examination. Then isn't it sort of speculative that there exists Janks material out there? No, Your Honor, but at a minimum, we have no choice because we're left with a representation or an assertion that essentially there wouldn't be any, but that's solely as it's limiting and as it's cabined to how the court defined the scope of Janks material that would exist. And so, with respect to the other issues, I would direct the court to our opening brief and to our reply brief and ask that the court grant Mr. Perma new trial with constitutional protections. Thank you. Thank you, Mr. Gilfan. The court also notes that you've undertaken this representation under the Criminal Justice Act, and we thank you for that. Thank you, Your Honor. Thank you also, Mr. Bateman, for your participation in the argument this morning. We'll take the case under advisement.